# Ruane *v.* Murray, Appellant.

*Principal and agent—Secret agreement—Notice—Liquor law.*

One who procures and actively assists another to carry on a business in his or her name and holds her or him out to the public as the responsible proprietor is bound by any contract which that other may make on his or her behalf, with a third party who has no knowledge of the secret arrangements between them. This is applicable to the owner of a liquor license who permits another to trade independently under the license, although the licensee is held out as the responsible owner of the business.

Argued Jan. 15, 1904.    Appeal, No. 66, Jan. T., 1904, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1902, No. 18, on verdict for plaintiff in case of Patrick Ruane v. Maria Murray.    Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.    Affirmed.

Assumpsit to recover wages.    Before WHEATON, J.
The facts are stated in the opinion of the Superior Court.

The court charged in part as follows :
[Now, that being the case, if you shall find this young man to have been innocent, and I recall no testimony which in my judgment would warrant you in finding that he had any knowledge of the fact that there had been any such agreement as the defendant testifies to in this case as between herself and her son and Fleming in March, 1900, then I say to you that as to this plaintiff this man John Fleming at the time he hired the plaintiff was in that place as the manager or agent of the

defendant, Mrs. Murray, and not as her tenant. To hold otherwise, to hold that he was there as a tenant, would be to give effect to an unlawful bargain to the detriment of an innocent third party, and as I have already said to you, the law will not do that, nor will it allow such a contract to be carried out to the extent of having such effect. So that you will come down then to this proposition, he was there in the place of Mrs. Murray as her manager, or as her agent. If from the time that bargain was made between her and Fleming she did not receive the profits of that business, it was because of this unlawful bargain.]

Next, did John Fleming have the right to hire him (the plaintiff)? If he did not have the right to hire him in the first place, did Mrs. Murray see him there frequently enough and often enough to know that he was there acting in that business as a bartender, and to know what he was receiving as a bartender, and did she ratify by permitting him to remain there for a period of a year and seven months the bargain which John Fleming made with him? In addition to that, was he there as an innocent party? Did he have knowledge during the time for which he claims wages that the business was being run in an unlawful way by John Fleming, that it was not the business of Mrs. Murray, but was John Fleming's business and was being run under her license by John Fleming; in other words was he an active participant knowingly in an illegal attempt to evade the liquor law? As I say to you, I recall no testimony in the case which would warrant a finding that he was anything but an innocent party there.] [2]

Verdict and judgment for plaintiff, for $393.17. Defendant appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them.

*John McGahren,* with him *P. A. O'Boyle,* for appellant, cited: Fowler v. Bank, 72 Pa. 456; Badgley v. Beale, 3 Watts, 263; Hoffman v. McMullen, 83 Fed. Repr. 372; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173.

*John T. Lenahan,* with him *James Murray,* for appellee,

cited; Maybin v. Coulon, 4 Yeates, 24; Mitchell v. Smith, 1 Binney, 110; Holt v. Green, 73 Pa. 198; Martachowski v. Orawitz, 14 Pa. Superior Ct. 175; Youghiogheny Iron & Coal Co. v. Smith, 66 Pa. 340; Hall v. White, 123 Pa. 95; Hubbard v. Tenbrook, 124 Pa. 291.

OPINION BY PORTER, J., October 17, 1904:

The plaintiff brought this action to recover a balance alleged to be due for wages as a barkeeper in a licensed saloon, from September 13, 1900 until June 19, 1902. The appellant did not deny that the plaintiff had rendered the services at the saloon in question but she asserted that she had no interest in the business, had not employed the plaintiff nor authorized his employment by any other person.

The saloon in question had been the property of the husband of defendant, who died in 1897, whereupon the license was transferred to the defendant, and the saloon was from that time until a date subsequent to the period during which the services of the plaintiff were rendered conducted under licenses duly issued annually by the court of quarter sessions to the defendant. The defendant offered testimony which if believed established that from the time of the death of her husband the business was managed for her by her brother, John Fleming, as her agent, until March, 1900, when she entered into an agreement with Fleming and her son, under the terms of which the business was to be conducted under the license in her name, but Fleming and defendant's son were to take the profits and pay the defendant $50.00 a month as rent for the property; that Fleming and the son conducted the business in this manner until May, 1900, when the son retired and the business was subsequently conducted by Fleming under the same arrangement; that the defendant took out a new license in her own name for the year 1901 and again for the year 1902, and Fleming continued to conduct the business under the license in the name of the defendant and under the terms of the agreement of March, 1900, until October, 1902, when the defendant sold the business and transferred the license to another party. There was no evidence that the agreement between the defendant on the one part and her son and Fleming upon the other part, was ever made public. It seems to have remained a secret one be-

tween the parties. This is probably to be accounted for upon the ground that the whole transaction between this defendant and her relatives involved a violation of law. In any view of the evidence, therefore, the defendant was permitting a saloon to be conducted in her name, and actively aided Fleming, in so holding her out to the public as the responsible party, by annually applying for and receiving a license in her own name, and upon each application for license she deliberately swore that she was the only party having any interest in the business. One who procures and actively assists another to carry on a business in his or her name and hold her or him out to the public as the responsible proprietor is bound by any contract which that other may make on his or her behalf, with a third party who has no knowledge of the secret arrangements between them. The defendant had by her positive acts clothed Fleming with apparent authority to bind her by contracts within the scope of that particular business, and if Fleming, when he employed the plaintiff, represented himself to be acting as the agent of the defendant, she was bound by the contract. The contract of employment of the plaintiff was not dependent upon the unlawful arrangement between the defendant and Fleming, and was not subject to its taint. Assuming the testimony of the defendant to be true, she herself had created conditions which clothed Fleming with authority to bind her, within the scope of the business, by a contract with an innocent third party who dealt upon the faith of such authority, and without notice of the secret agreement.

There was a conflict of testimony as to whether Fleming, in dealing with the plaintiff, had represented that he was acting for himself or as agent for the defendant. Under instructions of which there is no just ground of complaint, the jury determined this question in favor of the plaintiff. The jury found also that the plaintiff had no knowledge of the secret agreement between the defendant and Fleming. Those questions being determined adversely to the defendant, nothing further was required to fix her liability.

The judgment is affirmed.